<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MON CHERI BRIDALS, INC., : | |
| : | |
| Plaintiff, : | Civil No. 04-1739 (AET) |
| : | |
| v. : | **<u>MEMORANDUM AND ORDER</u>** |
| : | |
| WEN WU, et al. : | |
| : | |
| Defendants. : | |
| : | |

<u>THOMPSON, U.S.D.J.</u>

INTRODUCTION

This matter comes before the Court on behalf of Plaintiff Mon Cheri Bridals, Inc.'s Motion for Attorney's Fees and Other Post-Trial Relief [173], Defendant Wen Wu's Motion for a Judgement as a Matter of Law [174], and Defendant Wen Wu's Motion for a New Trial [175]. The Court has decided these motions based upon the submissions and oral arguments of the parties on July 31, 2008. For the reasons stated below, Plaintiff's motion is granted in part, and denied in part, and Defendant's motions are granted in part, and denied in part.

BACKGROUND

On April 15, 2004, Plaintiff Mon Cheri Bridals, Inc. ("Mon Cheri") filed a Complaint against Defendant Wen Wu and his companies ("Wu"), alleging trademark infringement, copyright infringement, unfair competition, and breach of contract. On March 24, 2008, after years of discovery and pretrial litigation, the trial commenced. At trial, Plaintiff limited its case to three claims: (1) breach of contract, (2) copyright infringement, and (3) passing off. On April

4, 2008, at the conclusion of the trial, a jury verdict was returned, in which the jury found that Defendant Wu breached its oral contract with Plaintiff, infringed twenty-nine (29) copyright registrations covering nine (9) different Mon Cheri dress designs, and that it was liable for "passing off" under federal and state unfair competition laws. The jury awarded compensatory damages in the amount of $324,000, and punitive damages in the amount of $375,000, for a total award of $699,000. On April 23, 2008, the parties filed their post-trial motions. On July 31, 2008, the Court heard oral argument on the motions.

## APPLICABLE LAW

A.   Standard for a New Trial

Federal Rule of Civil Procedure 59(a) provides a district court with the discretion to order a new trial after a jury verdict. However, "[a] new trial should be granted only when the verdict is contrary to the weight of the evidence or when a miscarriage of justice would result if the verdict were to stand." Brennan v. Norton, 350 F.3d 399, 430 (3d Cir. 2003) (citing Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1352 (3d Cir. 1991)). The decision whether to grant a new trial "is confided almost exclusively to the exercise of discretion" by the district court. Am. Bearing Co. v. Litton Indus., Inc., 729 F.2d 943, 948 (3d Cir. 1984) (citations omitted).

Federal Rule of Civil Procedure 61 dictates that "[n]o error . . . is ground for granting a new trial . . . unless refusal to take such action appears to the court inconsistent with substantial justice." Fed. R. Civ. P. 61. The court "must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Id. An "error" is defined as a "[d]eviation from a legal rule" and it affects substantial rights if the error is prejudicial, i.e., if it "affected the outcome of the district court proceedings." Moore v. Vislosky, Nos. 06-1232, 06-

1304, 2007 U.S. App. LEXIS 9285, at *36 (3d Cir. Apr. 23, 2007) (internal citations omitted).

B.  Standard for a Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(a)(1) provides that judgment as a matter of law is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on an issue." Fed. R. Civ. P. 50(a)(1).  The Court may "resolve the issue against the party," and "grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Id.

## DISCUSSION

A.  Defendant Wu's Motion for Judgment as a Matter of Law

Defendant Wu brings a motion for a judgment as a matter of law on four issues presented to the jury for determination.  Specifically, Defendant Wu seeks a judgment as a matter of law on the issues of (1) breach of contract, (2) copyright infringement, (3) passing off, and (4) damages.

1.  Breach of Contract

Defendant Wu argues that judgment as a matter of law should be granted, in his favor, as to Plaintiff's claim for breach of contract, because there was not sufficient evidence presented to the jury to find that a valid contract existed between Plaintiff and Defendant.  Specifically, Defendant Wu claims that there was no meeting of the minds between the parties, no acceptance that exactly matched the material terms of an offer, that there was no consideration for any alleged agreement, and that the terms of any alleged agreement were not certain.

The meeting of the minds, which is essential to the formation of a contract, is not determined by the secret intentions of the parties, but by their expressed intention, which may be

wholly at variance with the former.  See Lind v. Schenley Industries, Inc., 278 F.2d 79, 86 (3d Cir. 1960) ("if parties have concluded a transaction where it appears that they intend to make a contract, the court should not frustrate their intention").  Here, there was evidence presented to allow a jury to reach the conclusion that a contract, partially oral and partially written, between Mr. Wu and Stephen Lang, the President of Mon Cheri, had been formed.  Both Mr. Lang and Mr. Wu testified about the terms of an agreement between the parties and the evidence was sufficient for the jury to conclude that a meeting of the minds occurred.

Further, evidence was provided, in the form of testimony by Mr. Wu, that Defendant knew of the parties' obligations under the contract.  Mr. Wu testified that he believed that Plaintiff Mon Cheri breached the contract by copying a dress sold by Mr. Wu.  (Trial Tr. 86, March 31, 2008.)  Moreover, Mr. Lang testified that he believed the terms of the agreement to mean that Mr. Wu could not deliberately and systematically make identical, or near identical replicas of twenty-five (25) of Plaintiff Mon Cheri's best-selling dress designs.  (Trial Tr. 5-7, April 1, 2008.)  Thus, the jury had sufficient evidence to determine that there was ample consideration, and that each party knew of its obligations under the agreement.

    2.    Copyright Infringement

Defendant Wu argues that Plaintiff Mon Cheri failed to meet its burden that it is the owner of a valid copyright registration.  Specifically, Defendant Wu claims that the weight of the evidence shows that the copyright registrations were obtained by fraud, because Plaintiff Mon Cheri, or those acting on its behalf, knowingly failed to advise the copyright office that each of the embroidery, beading, or lace designs, were based on, or incorporated, preexisting designs, and that there is no legally sufficient evidentiary basis for a jury to find that Defendant infringed

4

the asserted copyright registrations.

Plaintiff argues that it presented sufficient evidence showing that Mon Cheri's copyright registrations are valid.  A party seeking to establish fraud on the Copyright Office bears the heavy burden of proving deliberate misrepresentation.  See Eckes v. Card Prices Update, 736 F.2d 859, 861 (2d Cir. 1984) (fraud on the Copyright Office occurs only when there is a "knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application").  During trial, Plaintiff provided evidence in the form of testimony from Ivonne Dome, an employee of Mon Cheri, showing that the designs were original works not based on prior works.  Moreover, the same testimony by Ms. Dome, and additional testimony from Mr. Lang, was provided to demonstrate the originality of the registered works to a jury.  Ms. Dome presented sketches of beading and embroidery designs, with detailed instructions to the factories in China to make dresses in accordance with the designs.  With such evidence presented at trial, a jury could reasonably have concluded that Mon Cheri did not commit fraud on the Copyright Office.

3.  Passing Off

Defendant Wu argues that there was not sufficient evidence presented at trial to allow a jury to find that Defendant Wu actually marketed any dresses as those of Mon Cheri, or that it attempted to persuade its buyers to sell any dresses as Mon Cheri dresses.

There was evidence presented at trial to allow a reasonable jury to conclude that Defendant Wu copied and "passed off" Mon Cheri's dress designs.  Specifically, Plaintiff Mon Cheri offered the testimony of Terri Martin, a retailer from Texas, who testified that an agent of Defendant Wu named Dominic, walked into her shop, and convinced her to order a number of

5

dresses because they were so similar, that she could pass them off. Specifically, Ms. Martin testified:

> [Dominic] said that he was very excited about the line because they had priced it well and that by doing so, we could sell it as a Montage. He said that, you know, it would be very easy to pass this off. He said that not only had they named their colors the same colors but he gave us the incentive - he said, you know, you can sell this as Montage.

(See Trial Tr. 52, March 25, 2008.) Further, Steve Baslow, one of Mr. Wu's former sales representatives, testified about a sales meeting at Mr. Wu's Fort Myers office, at which, a scheme to create an entire line of lookalike dresses and pass them off as Mon Cheri dresses was conceived. Therefore, the Court finds that there was evidence presented at trial to allow a reasonable jury to find in favor of Plaintiff Mon Cheri on its passing off claim.

    4.      Damages

In reviewing an award for punitive damages, the Court stands "in the role as gatekeeper." Inter Med. Supplies, Ltd. v. Ebi Med. Sys., 181 F.3d 446, 468 (3d Cir. 1999). Even if a liability award is maintained, a court may, as a matter of law, determine whether there is sufficient evidence to support a punitive damages award. Brennan v. Norton, 350 F.3d 399, 430 (3d Cir. 2003); Alexander v. Riga, 208 F.3d 419, 430 (3d Cir. 2000) ("whether there is sufficient evidence to support a punitive damages award is a question of law"). Moreover, when analyzing an award for punitive damages, the Court must "rely on its combined experience and judgment." Inter Med., 181 F.3d at 468.

The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor. State Farm Mut. Auto. Ins. Co. v.

Campbell, 538 U.S. 408, 413 (2003). Although compensatory damages and punitive damages are typically awarded at the same time by the same decision-maker, they serve distinct purposes. The former are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct. The latter are intended to punish the defendant and to deter future wrongdoing. A jury's assessment of the extent of a plaintiff's injury is essentially a factual determination, whereas its imposition of punitive damages is an expression of its moral condemnation. Gertz v. Robert Welch, Inc., 418 U.S. 323, 350 (1974). Unlike the measure of actual damages suffered, which presents a question of historical or predictive fact, the level of punitive damages is not really a "fact" "tried" by the jury. Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 459 (1996) (Scalia, J., dissenting); Cooper Indus. v. Leatherman Tool Group, 532 U.S. 424, 437 (2001).

      The United States Supreme Court has instructed courts evaluating a punitive damages award's consistency with due process to consider three criteria: (1) the degree or reprehensibility of the defendant's misconduct, (2) the disparity between the harm (or potential harm) suffered by the plaintiff, and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury, and the civil penalties authorized or imposed in comparable cases. BMW of North America, Inc., v. Gore, 517 U.S. 559, 574 (1996). In determining whether a punishment is grossly disproportional to the gravity of defendant's offense, courts have recognized that the relevant constitutional line is "inherently imprecise," rather than one marked by a simple mathematical formula. Id. at 582. The degree of reprehensibility of the defendant's conduct is "[t]he most important indicium of the reasonableness of a punitive damages award." Campbell, 538 U.S. at 419 (quoting Gore, 517 U.S. at 575).

In evaluating the degree of Defendant Wu's reprehensibility in this case, the Court must consider whether: "(1) the harm caused was physical as opposed to economic; (2) the tortuous conduct evinced an indifference to or reckless disregard of, the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the result of intentional malice, trickery, deceit or mere accident." Id.; CGB Occupational Therapy, Inc. v. RHA Health Services, Inc., 499 F.3d 184, 190 (3d Cir. 2007).

Analyzing the first factor of the reprehensibility test, the Court finds that Defendant Wu's actions resulted in economic harm to Plaintiff Mon Cheri, rather than physical harm. Further, under the second factor, the Court finds that the tortuous conduct by Defendant Wu did not demonstrate an indifference to, or reckless disregard, of the health or safety of others. With regard to the third factor, there is no indication in the record that Plaintiff Mon Cheri was suffering financial vulnerability. The evidence submitted at trial did not suggest that Plaintiff Mon Cheri's business was in financial danger. Rather, at the time of the trial, Plaintiff's business was successfully operating, and financially stable.

In considering the fourth factor of the reprehensibility analysis, the Third Circuit has stated, "while the 'repeated conduct' factor will necessarily have 'less force' where the defendant's misconduct did not extend beyond his dealings with the plaintiff, it may still be 'relevant' in measuring the reprehensibility of the defendant's conduct, based on the particular facts and circumstances presented." CGB Occupational, 499 F.3d at 191. Here, there is no evidence submitted at trial that Defendant Wu's conduct went beyond his dealings with Plaintiff. While the Court considers the number of dresses involved in the matter to be relevant, without

any indication that Defendant Wu committed repeated tortuous acts to other parties, the Court shall give less weight to the repeated conduct prong. Lastly, based on the nature of the Plaintiff's passing off claims, the Court finds that a showing of the fifth factor of the reprehensibility test, that the harm was the result of intentional malice, trickery, is unclear and uncertain.

Further, Defendant Wu's liability was based on three claims: breach of contract, copyright infringement, and passing off. However, in general, punitive damages are not available for liability based on breach of contract. Punitive damages are also not available for liability based on copyright infringement. Therefore, the only claim for which Plaintiff could possibly recover punitive damages, is for passing off. Here, Defendant Wu's liability for passing off is based upon vicarious liability. There was evidence that Defendant Wu's agent, Dominic, attempted to pass off dresses to Ms. Martin in Texas. Defendant Wu was found liable based upon the actions of his agent. The Court finds that the attenuated evidence in the record for passing off does not lend itself to an award for punitive damages. Therefore, the Court finds that awarding punitive damages for this one claim, against this defendant, unwarranted.

The Third Circuit has stated that economic torts are "less worthy of large punitive damages awards than torts inflicting injuries to health or safety." Inter Med., 181 F.3d at 467. Based on the Court's consideration of the reprehensibility guidepost and the tenuous nature of Defendant's liability, the Court finds that Defendant Wu's conduct was not sufficiently grievous as to justify an award of punitive damages. Accordingly, the Judgment against Defendant Wen Wu for punitive damages in the amount of $375,000 is hereby stricken.

B.   Plaintiff's Motion Attorney's Fees and Other Post-Trial Relief

In its Motion for Attorney's Fees and Other Post-Trial Relief, Plaintiff Mon Cheri

requests (1) a permanent injunction against Defendant Wu, (2) augmented damages under the Lanham Act, (3) Attorney's fees, and (4) costs.

### 1. Plaintiff's Request for a Permanent Injunction against Defendant Wu

Plaintiff argues that the Court should issue a permanent injunction in favor of Mon Cheri. Specifically, Plaintiff requests that the Court enter an Order permanently enjoining Defendant from further infringement of Mon Cheri's copyrights and from "passing off" Mon Cheri's dresses. Moreover, Plaintiff requests that the Court order seizure and impoundment of the infringing dresses currently in the possession or control of Defendant.

In seeking a permanent injunction, Plaintiff must demonstrate: (1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006). Irreparable injury is shown if "a plaintiff demonstrates a significant risk that he . . . will experience significant harm that cannot adequately be compensated, after the fact, by monetary damages." Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000).

Defendant Wu argues that any injunctive relief must be tailored to prevent only the copying of any protectable elements of Mon Cheri's copyrights. But, Defendant argues that the Court is unable to craft an injunction tailored to address a specific legal violation that would not infringe upon non-copyrightable elements of dress design. Lastly, Defendant argues that the settlement agreement between Mirage, Inc., ("Mirage") and Bernie Kaitz, authorized Mirage to "sell its remaining inventory of dresses as represented in the Kaitz Affidavit," and, therefore,

Defendant Wu should be permitted to ship any remaining Mirage dresses in inventory.

The Court finds that issuing a permanent injunction in favor of Plaintiff, against Defendant Wu, in this case, would be inappropriate. Plaintiff filed a Complaint in this Court against Defendant, and proceeded to trial, in which a jury returned a verdict in its favor. In the jury verdict, Plaintiff was awarded compensatory damages in the amount of $324,000. The Court believes that monetary damages are adequate to compensate for any anticipated future injury. Moreover, the difficulty in crafting an injunction to address specific legal violations that would not infringe upon Defendant's ability to produce unprotectable elements in future dress designs, makes it improper for the Court to issue injunction relief in favor of Plaintiff. Plaintiff is not claiming Defendant copied its protected interest in the dress designs. Plaintiff is claiming a protected interest in the lace patterns on the dresses.

2. <u>Augmented Damages under the Lanham Act & New Jersey Law</u>

In its Motion, Plaintiff requests that the Court treble the damages that the jury found against Defendant Wu, because Plaintiff claims that Defendant Wu copied Mon Cheri's dresses for a decade, despite signing a contract that promised that he would stop copying. Thus, Plaintiff argues that the circumstances surrounding the case, suggest that the Court should award treble damages under the Lanham Act, 15 U.S.C. § 1117(a).

The Lanham Act states, "in assessing damages, the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). Additionally, pursuant to N.J. Stat. Ann. § 56:4-2, "damages may be trebled in the discretion of the court."

The Court finds awarding Plaintiff treble damages under the Lanham Act and New Jersey

law inappropriate in this matter.  The circumstances of this case, the claims involved, and the verdict returned by the jury awarding damages, do not warrant augmented damages.  The Court, in its discretion, does not find the damages awarded by the jury to be inadequate, and thus, the Court declines awarding Plaintiff augmented damages.

       3.       Plaintiff's Request for Attorney's Fees

In its brief, Plaintiff argues that it is entitled to attorney's fees.  Under the Lanham Act, the Court may award attorney's fees where a jury has awarded punitive damages based on the willfulness and bad faith of Defendants.  The Third Circuit has stated that the threshold is met where infringing acts "can be characterized as malicious, fraudulent, deliberate, or willful." Ferrero U.S.A., Inc. v. Ozak Trading, Inc., 952 F.2d 44, 47 (3d Cir. 1991).

Defendant Wu argues that this case does not qualify as an "exceptional" case in which to award attorney's fees.  Specifically, Defendant contends that the culpable conduct of Defendant was not exceptional enough to warrant attorney's fees.  Determining whether a case is exceptional is a two-step process.  First, "a district court must make a finding of culpable conduct on the part of the losing party, such as bad faith, fraud, malice, or knowing infringement, before a case qualifies as 'exceptional.'" Id.  Second, if the district court finds culpable conduct, it must decide whether the circumstances are "exceptional" enough to warrant a fee award.  Green v. Fornario, 486 F.3d 100, 103 (3d Cir. 2007).  Lastly, "attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.  There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised . . ." Fogerty v. Fantasy, Inc., 510 U.S. 517, 535 (1994).

Here, the Court has stricken the punitive damages award.  The Court believes that

Plaintiff it is not entitled to recover attorney's fees under the Lanham Act in this case. Moreover, the Court does not find that this case qualifies as an exceptional case in which to award attorney's fees. Therefore, Plaintiff's request for attorney's fees is denied.

  4. Plaintiff's Request for Costs

The Judgment entered by the Court on April 9, 2008, awards costs in favor of Plaintiff Mon Cheri. Under 28 U.S.C. § 1920, a judge or clerk of any court of the United States may tax as costs the following: (1) fees of the clerk and marshal; (2) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; and (5) docket fees under section 1923 of this title. In its Motion for Attorney's Fees, Plaintiff submitted a Bill of Costs pursuant to L. Civ. R. 54.1. Costs will be awarded.

  a. Phone, Postage and Online Research

Plaintiff seeks recovery of costs for fax, phone, postage, and online research. However, long distance phone calls, postage, and online research may be charged as part of attorney's fees, but not costs. Abrams v. Lightolier, 50 F.3d 1204, 1225 (3d Cir. 1995); Boyadjian v. Cigna Cos., 994 F. Supp. 278, 280-282 (D.N.J. 1998). Accordingly, because the Court has determined that Plaintiff is not entitled to attorney's fees, it cannot recover amounts spent on phone calls, postage, and online research.

  b. Printing and Duplication

Under L. Civ. R. 54.1(g)(9), the copies of papers are only taxable when the documents are admitted into evidence, or necessarily attached to a court filing, and they are in lieu of originals

which are introduced at the request of opposing counsel. "The cost of copies obtained for counsel's own use is not taxable." L. Civ. R. 54.1(g)(9). However, Plaintiff Mon Cheri has not made the required showing that all such copies meet the above requirements. Rather than engage in speculation, the Court will deny this portion of Plaintiff's application.

      c.    <u>Filing Fees</u>

Recovery of filing fees as costs is specifically provided for under 28 U.S.C. § 1920. Accordingly, the Court grants Plaintiff's request for filing fee costs in the amount of $410.00.

      d.    <u>Subpoena Fee</u>

Recovery of subpoena fees is specifically provided for under 28 U.S.C. § 1920. Accordingly, the Court grants Plaintiff's request for subpoena fees in the amount of $1229.20.

      e.    <u>Witness Travel</u>

A prevailing party is entitled to costs for air travel expenses for witnesses testifying at trial or deposition under 28 U.S.C. § 1821. <u>See</u> <u>Brown v. The McGraw-Hill Companies, Inc.</u>, 526 F. Supp. 2d 950, 954 (N.D. Iowa 2007). Accordingly, the Court grants Plaintiff's request for witness travel in the amount of $943.83.

      f.    <u>Deposition Expenses</u>

Defendant Wu objects to Plaintiff's request for deposition expenses for those depositions not used at trial. However, 28 U.S.C. § 1920 permits the taxation of the expense of pretrial deposition transcripts if the transcripts were necessarily obtained for use at trial, and not merely for discovery purposes or for the convenience of counsel. "To be taxable, the deposition transcripts need not be introduced into evidence at trial. It suffices that at the time the deposition was taken, it was reasonably expected that the transcript would be used for trial preparation."

U.S. Media Corp, Inc. v. Edde Entertainment, Inc., Civ. No. 94-4849, 1999 WL 498216 at *9 (S.D.N.Y. July 14, 1999). Plaintiff asserts that all of the deposition transcripts were necessary for trial preparation as well as the post-trial motions. Plaintiff argues that every witness who was deposed either testified at trial, or was listed as a trial witness in the Final Pretrial Order. Accordingly, the Court grants Plaintiff's request for deposition expenses in the amount of $15,247.52.

    g. Trial Transcripts

A copy of the final transcript, obtained at a regular rate, is taxable if needed for the litigation. Id.; see also In re Kulicke & Soffa Indust, Inc. Sec. Litig., 747 F. Supp. 1136 (E.D. Pa. 1990) (awarding costs for trial transcripts that are necessary to respond to post-trial motions). In U.S. Media, the court held that "the trial transcript ultimately had to be ordered, presumably for post-trial motions." U.S. Media, 1999 WL 498216 at *9. Here, the trial transcripts were charged at the regular rate, and were necessary for the numerous post-trial motions. Accordingly, the Court grants Plaintiff's request for trial transcripts in the amount of $1,722.80.

C. Defendant's Motion for New Trial

  1. Jury Instructions

Defendant Wu argues that the jury instructions improperly "lumped" together the dresses sold by Mr. Wu and his companies under the "Labelle Fashions" label with the Mirage dresses, and, thus, tainted the deliberation process. Defendant Wu claims that neither Plaintiff Mon Cheri, nor the jury instructions, made clear which of the dresses were being asserted in each of the breach of contract, copyright infringement, and passing-off claims. Therefore, in light of Plaintiff's settlement agreement with Mr. Kaitz, it was improper to charge the jury on the Mirage

15

dresses because any alleged wrongful conduct by Defendant Wu was released, or specifically authorized by the settlement agreement.

However, the submitted jury instructions state that Plaintiff Mon Cheri settled with Mirage and Mr. Kaitz, and explicitly spelled out the specific dresses that were Mirage dresses, identifying them by dress number. Moreover, after the parties delivered closing arguments, the Court directed the parties to deliver supplemental closing arguments for the specific purpose of clarifying for the jury the precise dresses on which Plaintiff Mon Cheri made each of its claims. The parties delivered supplemental closing arguments to the jury on each dress design, as well as submitted to the jury a list of each specific dress identified by dress number. As a result, the Court does not find that the dress designs were improperly submitted to the jury.

Additionally, Defendant Wu argues that a new trial should be granted on the ground that Plaintiff Mon Cheri improperly structured its presentation to the jury by painting Defendant Wu as Mirage, despite Plaintiffs prior settlement agreement with Mirage. Defendant Wu argues that Plaintiff Mon Cheri "hid" the settlement agreement from the Court and the jury, causing substantial injustice which warrants a mistrial.

On July 3, 2007, nine (9) months before the start of this trial, a Stipulation of Dismissal [108] was filed with the Court, dismissing Mirage Collection, Inc., and Bernie Kaitz based on a settlement with Plaintiff Mon Cheri. The settlement was reached during a settlement conference with the Court in November, 2006. However, not until March 20, 2008, a mere eight (8) days before trial, did Defendant formally request the terms of the agreement. During a conference call with the Court, Defendant made an oral motion seeking production of the settlement. Until that time, Defendant had not submitted a discovery request, or filed a motion with the Court, seeking

16

to discover the terms of the agreement.

Further, Plaintiff Mon Cheri's settlement with Mirage does not bar or affect the claims which were tried against Defendant Wu. While Defendant argues that the settlement agreement has fully released them from all liability, "the release of one tortfeasor will not release others who may also be liable to plaintiff for his harm unless the release is so intended, or the plaintiff receives as a result thereof either full satisfaction or satisfaction intended as such." Breen v. Peck, 146 A.2d 665, 672 (N.J. 1958). However, there is no indication that the parties to the Settlement Agreement intended to release Defendant Wu. See Newman v. Isuzu Motors America, 842 A.2d 255, 260 (N.J. Super. Ct., App. Div. 2004) (the intent of the parties must be examined when the settlement was made). Defendant Wu was not identified in, nor a signatory to, the settlement agreement. Moreover, Mr. Kaitz's Affidavit states that Defendant Wu was not involved in the subject matter of the Settlement Agreement; "neither Wen Wu nor any entities Mr. Wu owns or controls has any ownership interest in Mirage Collection, Inc." (Kaitz Aff. 2.) Lastly, the filed Stipulations of Dismissal make no mention of any release of Defendant Wu. Therefore, the Court finds that there was no intent on the part of any of the parties to the settlement agreement to release Defendant Wu.

2.   Jury Trial Issues

Defendant Wu asserts that the Court improperly submitted the issue to the jury as to whether the statements made by Dominic to Ms. Martin were not hearsay, and thus admissible. Specifically, Defendant claims that the Court improperly allowed the to jury decide whether Dominic should be considered to be Defendant Wu's agent, or servant, concerning a matter within the scope of his employment.

At trial, Ms. Martin testified regarding a conversation she had with Dominic. Ms. Martin stated that Dominic identified himself to her as a representative of certain dress lines sold by Defendant Wu. Moreover, Mr. Wu testified that Dominic had been a sales representative with his companies for many years, and that his responsibilities included calling on retailers to sell dresses. (Trial Tr. 22-24, March 25, 2008.) Mr. Baslow testified that Dominic was a sales representative and a key assistant to Defendant Wu. Further, John Bills, a witness presented by Defendant Wu, testified that Dominic worked for him in the same territory in which Ms. Martin's retail store was located. (Trial Tr. 112, 135, 148, March 27, 2008.)

During her testimony, Ms. Martin stated that Dominic introduced dresses to her, attempted to get her to buy them, and filled out an order form that was a standard form used by Defendant Wu. (Trial Tr. 89, March 25, 2008.) The jury was to decide whether Dominic was an agent of Defendant Wu, not whether the statements were hearsay. The testimony at trial, and the proofs submitted, were sufficient to allow a reasonable jury to conclude that Dominic was an agent of Defendant Wu. Accordingly, the Court does not find that the issue of whether Dominic was an agent of Defendant Wu was improperly submitted to the jury.

### 3. New Evidence

Defendant Wu argues that newly discovered evidence shows that Ms. Dome was not the original creator of the copyrighted designs. Specifically, Defendant asserts that Sherry Hill, who worked for the designer Jovani, had created the embroidery design that Plaintiff Mon Cheri asserted was created by Ivonne Dome, and was the basis for twenty-one (21) separate copyright registrations filed by Mon Cheri. Defendant Wu asserts that since the trial, it has been able to confirm with Ms. Hill that she was the creator of at least the embroidery design of the 21917

dress style of Plaintiff Mon Cheri.

Plaintiff argues that Defendant has not proffered the evidence to the Court, and that the evidence is cumulative at best. Further, Defendant offers nothing to show that the existence and knowledge of Ms. Hill could not have been discovered prior to trial through the exercise of reasonable diligence, or, that the testimony would probably have changed the outcome of the trial.

A court may grant a motion for a new trial if the motion is based on newly discovered evidence. Fed. R. Civ. P. 59(a)(1)(A). However, a party is entitled to a new trial only if such evidence is material and not merely cumulative, and would probably have changed the outcome. At trial, Defendant Wu presented evidence from one of its witnesses, Mr. Lin, who testified that Ms. Hill was the originator of the design for a Jovani dress. Therefore, the jury was presented with evidence in contrast with Plaintiff's assertion that Ms. Dome was the original creator of the designs. The jury, through deliberations, found that Ms. Dome was the creator of the designs, and that Plaintiff Mon Cheri held valid copyrights. Thus, the Court does not find that the jury would have probably reached a different conclusion had they heard Ms. Hill's testimony regarding evidence already in the record.

## CONCLUSION

For the reasons given above, and for good cause shown,

It is on this 6th day of October 2008,

ORDERED that Defendant Wen Wu's Motion for a New Trial [175] is DENIED; and it is further

ORDERED that Plaintiff Mon Cheri Bridals Inc.'s Motion for Attorney's Fees and Other

Post-Trial Relief [173] is DENIED in part and GRANTED in part; and it is further

ORDERED that Judgment shall be entered in favor of Plaintiff Mon Cheri in the amount of $19,553.25 for costs; and it is further

ORDERED that Defendant Wen Wu's Motion for a Judgment as a Matter of Law [174] is DENIED in part, and GRANTED in part; and it is further

ORDERED that the Judgment against Defendant Wen Wu for Punitive Damages in the amount of $375,000 is hereby stricken.

                                                                        s/ Anne E. Thompson
                                                        ANNE E. THOMPSON, U.S.D.J.